UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS

In re BENJAMIN & ELISHA NAUMANN,    )    Case No.:  09-32092
                                    )
            Debtors.                )    Chapter 13

**BRIEF IN OPPOSITION TO SHELL COMMUNITY FEDERAL CREDIT UNION'S OBJECTION TO CONFIRMATION OF PLAN**

COME NOW the Debtors, Benjamin and Elisha Naumann, by and through their attorneys, Law Offices of Mueller and Haller, L.L.C., and for their Brief in Opposition to Shell Community Federal Credit Union's Objection to Confirmation of Plan, state as follows:

**STATEMENT OF FACTS**

On April 7, 2006, Debtor, Mr. Naumann, purchased a 2006 Dodge Caravan ("collateral") from Dave Mungenast Alton Toyota Dodge.  The purchase was financed through Shell Community Federal Credit Union ("Shell").  There is no dispute that this purchase occurred more than 910 days prior to the filing of the Debtors' bankruptcy petition.

On September 11, 2007, Debtors refinanced the purchase loan through Shell giving Shell a security interest in the collateral.  This refinancing significantly changed the terms of Debtors' loan, in that it added Mrs. Naumann to the debt as a co-debtor, increased the interest rate by 2%, extended the loan term by 12 months, and lowered the monthly payments by $116.08.   The refinancing occurred within 910 days of Debtors' filing their petition in bankruptcy.

On August 11, 2009, Debtors filed a petition under Chapter 13 of the Bankruptcy Code and listed Shell as a secured creditor.  Debtors' Chapter 13 Plan proposes to pay

Shell the value of the collateral at the *Till* rate of interest pursuant to section 1325(a)(5)(B) of the Bankruptcy Code. Debtors' plan proposes to pay less than the total amount owed ($20,969.05 per the Creditor's filed proof of claim) and instead pay the value of the vehicle pursuant to section 506 of the Bankruptcy Code ($9,875.00).

On October 7, 2009, Shell filed an Objection to Confirmation of Plan, claiming that Debtors had incurred the loan within 910 days of the filing of their Chapter 13 bankruptcy and therefore the loan must be paid in full.

## ISSUE

The principle issue is whether the transaction between Mr. and Ms. Naumann and the Creditor to refinance the purchase money loan between Mr. Naumann and the Creditor eliminates the purchase money security interest of the original lender, thereby giving the refinancing creditor a general security interest that can be "crammed down" pursuant to 11 U.S.C. § 506. This issue is effectively decided on whether the refinancing is determined to be a novation or a renewal of the original obligation.

## ARGUMENT

I. **THE PLAIN LANGUAGE OF THE BANKRUPTCY CODE AND ILLINOIS LAW DEMONSTRATE THAT THE REFINANCING IS A NOVATION, AND AS SUCH, THE CREDITOR NO LONGER HOLDS A PMSI.**

The plain language of the Bankruptcy Code states that to avoid having its secured interest "crammed down," a creditor must have, first and foremost, a purchase money security interest in the collateral at issue. Section 1325 (a)(9) states in relevant part:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a **purchase money security interest** securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor

vehicle…acquired for the personal use of the debtor….(emphasis added)

Section 506(a)(1) states in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest…is a secured claim to the extent of the value of such creditor's interest…and is an unsecured claim to the extent that the value of such creditor's interest…is less than the amount of such allowed claim.

Taken together, these two Sections of the Bankruptcy Code allow a debtor to pay a secured creditor the value of a piece of collateral as opposed to the claim amount, unless, if the collateral is a motor vehicle purchased within the 910 days preceding the bankruptcy's filing for the personal use of the debtor, the creditor has a purchase money security interest ("PMSI") in the collateral. Without such a PMSI, the creditor is simply a secured creditor, and the claim may be "crammed down" to the value of the collateral.

The law is well settled that when the language of a statute is plain, the court should enforce that plain language.

> It is well established that "when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (internal quotation marks omitted) (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in turn quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))).

*Lamie v. U.S. Trustee,* 124 S.Ct. 1023, 1030 (2004).

The plain language of the above two Sections clearly indicates that without a PMSI, a secured creditor's claim may be reduced to the value of the collateral. In the instant case, Shell does not have a PMSI, and therefore Debtors' "cram down" of its secured claim is appropriate, and Shell's Objection should be overruled.

**A.      Shell does not have a PMSI in the Debtor's collateral**

Under the definition of PMSI given in the Uniform Commercial Code of Illinois, Shell does not have a PMSI. Illinois U.C.C. § 9-103 states in relevant part:

> (a) Definitions. In this Section: (1) "purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to the collateral; and (2) "purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.
> (b) Purchase-money security interest in goods. A security interest in goods is a purchase-money security interest: (1) to the extent that the goods are purchase money collateral with respect to that security interest….

Under the UCC of Illinois, Shell does not have a PMSI. It did not give the Debtors a purchase money loan that "enable[d] the debtor to acquire rights in or the use of" the collateral. When Shell refinanced the Debtors' loan, they had already owned and been using the collateral for over a year. Shell's loan, therefore, could not be a purchase money loan, and Shell's interest can not be a PMSI.

Additionally, case law within the Seventh Circuit defines a refinanced loan such as what Shell gave to Debtor as a "novation," and holds that such a loan extinguishes the PMSI of the original lender. In *Johnson v. Richardson*, 47 B.R. 113 (W.D.Wi. 1985), the court discussed the result of a refinancing on a PMSI.

> At least one court has held that *any* financing which terminates the initial loan also results in an unrevivable termination of the PMSI. This is because the new loan was not made to enable the debtor to acquire rights in the collateral, but is used to pay an antecedent debt. *In Re Conn,* 16 B.R. 454 (Bankr. W.D. Ky. 1982) citing (but not concurring in) *In Re Jones,* 5 Bankr. 655, 6 B.C.D. 848 (Bankr. M.D. N.C. 1980). Courts have

4

>generally been willing to look beyond the formal notion of refinancing articulated in *Jones* and consider the substance of the questioned transactions. The refinancing agreements have thus been characterized as either renewals of the original note or as novations.  The degree to which the original obligation of the debtor has changed determines whether refinancing constitutes a renewal or a novation. Where a novation is found, the PMSI is extinguished. *In Re Gayhart,* 33 Bankr. 699, 11 B.C.D. 1353 (Bankr. N.D. Ill. 1983), *In Re Russell,* 29 B.R. 270 (Bankr. W.D. Okla. 1983).

The effect of Shell's refinancing loan in the present case was that it significantly changed the obligations of the Debtors, thereby extinguishing the PMSI Shell held under the original debt, leaving them with a non-purchase money security interest.  Therefore, because Shell does not have a PMSI, its Objection should be overruled.

The bankruptcy court in the Southern District of Illinois has followed the rationale in *Johnson*.  In *In re Short*, the Southern District stated that a novation extinguishes a PMSI, but acknowledged a split of authority in the Circuit courts as to the definition of what constitutes a novation. 170 B.R. 128, 134 (S.D. Ill. 1994) Under the "dual-status" rule, a lien may be part purchase-money and part non-purchase-money, and the PMSI aspect of the lien may continue after refinancing, but only if some method exists of applying payments between the two types of obligations.  170 B.R. at 133.  Under the "transformation" rule, a PMSI is automatically transformed into a non-purchase-money interest when any part of the loan is renewed or refinanced.  Id.

The court in *Short* explained that courts in the Seventh Circuit have taken a "case-by-case" approach to the issue, with an emphasis on whether the intent of the parties was to extend or destroy the PMSI, as evidenced by new or different

5

loan terms. 170 B.R. at 134 – 135. "The greater the degree of change in obligation…the more likely a novation will be found." 170 B.R. at 134 (quoting from *In re Hatfield*, 117 B.R. 387, 390 (C.D. Ill 1990)). The *Short* case and the cases examined therein all involved situations in which the original creditor, not a third party, renewed or refinanced the original loan, and involved an examination of the degree to which the terms changed with the new agreements.

In this case, the facts are not in dispute. The obligation has changed significantly. First, the addition of a co-debtor on the note is important and arguably determinative by itself. Ms. Naumann agreed to sign the refinancing note as a co-debtor even though she has no ownership interest in the car. She did not personally owe the Creditor any money on the vehicle before this refinancing document was signed. It therefore cannot be classified as a renewal of any type of antecedent debt and therefore indicates clearly that the refinancing was a novation.

The refinancing document also significantly increased total cost to Mr. Naumann to pay the debt owed to the Creditor. The interest rate increased from 5.75 to 7.75 % and extended the duration of the loan from 72 months to 84 months. This effectively means that the Debtors will pay the Creditor significantly more than on the original note.

The original note indicates that Mr. Naumann would pay a total of $36,428.40 with interest. Mr. Naumann evidently paid at least $5,546.10 to the Creditor between the time of the original note and the refinancing. This is based on the different of the principle amount due on each note. This does not add in

any additional payments for interest.  Under the refinancing document, Mr. and Ms. Naumann are scheduled to pay a total of $32,748.68.  This amount added to the $5,546.10 equals $38,294.78 conservatively and this amount is probably higher because it doesn't include any interest payments.   This means that Mr. Naumann will end up paying a minimum of 5% more on the amount financed.  This is a significant amount and does not indicate a renewal of a note and instead a novation.

The refinancing document will result in significant change in the interest rate, monthly payment and duration of the loan and total amount paid.  These are significant changes and a novation is created as a result of these changes.  The case law in the Seventh Circuit supports this conclusion.  *Johnson v. Richardson*, 47 B.R. 113 (W.D.Wi. 1985).  Shell's refinancing of Debtor's purchase-money loan extinguished the PMSI they originally held, and its Objection should be overruled.

In the present case, Shell's PMSI was extinguished when Shell refinanced Debtors' loan by adding a co-debtor, changing the monthly payment, interest rate and duration of the loan, leaving Shell a non-purchase money security interest, which can be "crammed down" under Section 506(a)(1) of the Bankruptcy Code.  Shell does not have a PMSI under the U.C.C.'s definition of purchase-money-security interest, which clearly states that to have such an interest, the obligation must have enabled the debtor to acquire rights in or the use of the collateral.  Nor does it have a PMSI as defined by cases within the Seventh Circuit.  Within the Seventh Circuit, courts have held that when a creditor

7

refinances a purchase money loan and significantly changes the terms of the original loan, a novation occurs such that the PMSI is extinguished. Accordingly, Shell does not have a PMSI, and its Objection should be overruled.

**CONCLUSION**

Shell's interest in Debtors' collateral is not a PMSI, as defined by Illinois U.C.C. or Seventh Circuit case law. It did not give Debtors a loan that "enable[d] the debtor to acquire rights in or the use of the collateral." Shell's PMSI was extinguished when they refinanced Debtor's loan by adding a co-debtor, changing the monthly payment, interest rate and duration of the loan, leaving Shell a non-purchase money security interest, which can be "crammed down" under Section 506(a)(1) of the Bankruptcy Code. Shell does not have a PMSI under the U.C.C.'s definition of purchase-money-security interest, which clearly states that to have such an interest, the obligation must have enabled the debtor to acquire rights in or the use of the collateral. Nor does it have a PMSI as defined by cases within the Seventh Circuit. Cases within the Seventh Circuit have held that when a third party refinances a purchase money loan or when significant changes are made to a PMSI, a novation occurs such that the PMSI is extinguished. Accordingly, Shell does not have a PMSI, and its Objection should be overruled.

BENJAMIN & ELISHA NAUMANN,

By: /s/ William A. Mueller
William A. Mueller #06187732
James J. Haller #06226796
Attorneys for Debtors
5312 West Main Street
Belleville, Illinois 62226
(618) 236-7000

8

**<u>NOTICE OF ELECTRONIC FILING AND</u>**
**<u>CERTIFICATE OF SERVICE BY MAIL</u>**

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | Case No.: 09-32092 |
| | ) SS | |
| CITY OF BELLEVILLE | ) | Chapter 13 |

Jennifer Schweiger, being duly sworn, deposes and says:

Deponent is not a party to the action, is over 18 years of age, and resides in St. Clair County, Illinois.

On January 7, 2010, Deponent electronically filed with the Clerk of the U. S. Bankruptcy Court **Brief in Opposition to Shell Community Federal Credit Union's Objection to Confirmation of Plan**.

The Deponent served electronically the **Brief in Opposition to Shell Community Federal Credit Union's Objection to Confirmation of Plan** to the following parties:

U.S. Trustee

U. S. Bankruptcy Court

Russell C. Simon

and served by mail to the following parties:

Shell Community
Federal Credit Union
c/o Paul Lauber
3B Club Centre Court
Edwardsville, IL 62025

by depositing a true copy of same, enclosed in a postage paid properly addressed wrapper, in a Belleville City Branch, official depository under the exclusive care and custody of the United States Postal Service, within the State of Illinois.

By: /s/ Jennifer Schweiger