UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re BENJAMIN & ELISHA NAUMANN | ) | Case No. 09-32092 |
| | ) | |
| Debtors | ) | Chapter 13 |

## BRIEF IN SUPPORT OF
## SHELL COMMUNITY FEDERAL CREDIT UNION'S
## OBJECTION TO CONFIRMATION OF PLAN

Shell Community Federal Credit Union ("Shell"), for its Brief in Support of Objection to Confirmation of Plan, states as follow:

### STATEMENT OF FACTS

The Statement of Facts are accepted as laid out in Debtors' "Brief in Opposition to Shell Community Federal Credit Union's Objection to Confirmation of Plan" filed with the United States Bankruptcy Court, Southern District of Illinois on January 7, 2010, with the following exception:

Debtors contend that the September 11, 2007 refinance of the 2006 Dodge Caravan "significantly" changed the terms of Debtors' loan. The facts laid out pertaining to the refinance are accurate; however, the refinance did not significantly change Debtor Benjamin Naumann's loan in a material way; the loan was not a purchase money loan at any time as to Mrs. Naumann.

### ISSUE

The principal issue is whether Shell retained a purchase-money security interest in the 2006 Dodge Caravan despite the refinance transaction between the Debtors and Creditor. If the purchase-money security interest survives the refinance, then the amount owed on the 2006 Dodge Caravan cannot be "crammed down" pursuant to 11 U.S.C. § 506. This issue is

1

effectively decided by whether the refinance transaction is determined to be a renewal or a novation of the original loan.

## ARGUMENT

I. **THE PLAIN LANGUAGE OF THE BANKRUPTCY CODE AND ILLINOIS LAW DICTATE THAT THE REFINANCE TRANSACTION IS A RENEWAL, AND AS SUCH, SHELL RETAINS A PURCHASE-MONEY SECURITY INTEREST IN THE 2006 DODGE CARAVAN.**

Section 1325(a)(9) provides in relevant part:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a **purchase-money security interest** securing the debt that is subject to the claim, the **debt was incurred within the 910-day preceding** the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor, . . .. (Emphasis added.)

Section 506(a)(1) states in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

Shell acknowledges Debtors' contention that without a purchase-money security interest, Shell's claim may be reduced to the value of the collateral as of the date Debtors filed their petition. However, in the case at bar, Shell retained its purchase-money security interest in the 2006 Dodge Caravan, and therefore "cram down" of the debt owed pursuant to 506(a)(1) is inappropriate.

A. **Shell has a purchase-money security interest in the Debtors' collateral**

The Uniform Commercial Code of Illinois defines purchase-money security interest at Illinois U.C.C. § 9-103, in relevant part as follows:

> (a) Definitions. In this Section: (1) "purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to the collateral; and (2) "purchase-money obligation" means an obligation of an obligor

2

>incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used. (b) Purchase-money security interest in goods. A security interest in goods is a purchase-money security interest: (1) to the extent that the goods are purchase money collateral with respect to that security interest…

The Debtors contend that the refinanced loan did not give the Debtors the money to purchase the 2006 Dodge Caravan, and as such Shell's interest cannot be purchase-money security interest. However, precedents established by case law allow a creditor's purchase-money security interests to be retained despite a refinance transaction.

There is clear precedent that a refinanced loan can retain a purchase-money security interest. In 1994, this Court stated, "Though in form the original note is canceled, its balance is absorbed into the refinancing loan. To the extent of that balance, the purchase money security interest taken under the original note likewise survives, because what is owed on the original note is not eliminated, it is merely transferred to and increased in amount by, another obligation. The refinancing changes the character of neither the balance due under the first loan nor the security interest taken under it." *In re Short*, 170 B.R. 128, 133 (Bankr.S.D.Ill. 1994).

Thus, as determined by *Short*, Shell may certainly retain a purchase-money security interest in the 2006 Dodge Caravan, up to the balance of the original loan at the time of refinancing. The fact that the money from the refinanced loan was not used to acquire the collateral property is not relevant.

Because Shell may retain a purchase-money security interest despite the refinance transaction, it must be determined whether the refinance loan should be considered a "renewal" of the original loan, or a "novation." If the refinanced loan is considered a renewal, then Shell's purchase-money security interest survives. If the refinanced loan is considered a novation, then the purchase-money security interest fails to survive.

"In delineating between a novation and a renewal, the courts have focused on the degree to which the original obligation of the debtor has changed and, to some extent, on any additional consideration which was conveyed by the debtor to the creditor." In re Gayhart, 33 B.R. 699, 700 (Bankr.N.D.Ill. 1983).

In the following cases bankruptcy courts have found renewals.

(i) The Bankruptcy Court for the Western District of Kentucky held that a purchase-money security interest on a lien on a television survived a refinance transaction where the same creditor made the original and refinance loan, to the extent of the unpaid purchase price. In re Conn, 16 B.R. 454 (Bankr.W.D.Ky. 1982).

(ii) Another Bankruptcy Court determined that a purchase-money security interest survived a refinance transaction to the extent of the unpaid purchase price, despite the fact that additional funds were borrowed at the time of refinance. In re Russell, 29 B.R. 270 (Bankr.W.D.Ok. 1983).

(iii) The Bankruptcy Court for the Northern District of Illinois held in *Gayhart* that a refinanced note was a renewal and not a "fresh advance," because it was secured by the same property as the original financing agreement despite an increase in the interest rate and an extension of the payment period.

(iv) The Bankruptcy Court for the Central District of Illinois found a refinance transaction to be a renewal where there was a small reduction in the monthly payment amount, an extended period of repayment, and no additional funds were loaned. In re Hatfield, 117 B.R. 387 (Bankr.C.D.Ill. 1990). The Court in *Hatfield* noted that having no additional funds loaned at the time of refinance was a significant factor in finding a renewal. Hatfield at 391.

4

In the case at bar, all of the above mentioned criteria for finding a renewal are present. (i) Shell was the Creditor on the original note as well as the refinance, in line with the finding for a renewal in *Conn*. (ii) The purchase-money security interest should survive here to the extent of the unpaid purchase price, as in *Russell*, and there is even a stronger argument here for renewal, as no additional funds were borrowed at the time of refinance, which was an important factor to finding a renewal in *Hatfield*. (iii) The refinanced loan in this case decreased the amount of the monthly payment, and extended the time for payment, as in *Gayhart*. All of the changes to the loan terms with Mr. Naumann are changes that have been found where the refinance is considered a renewal. Also like *Gayhart*, both the original loan and the refinanced loan specifically identify the 2006 Dodge Caravan as the collateral.

Cases where courts have found a novation are distinguishable from the case at bar. A Wisconsin bankruptcy court found a novation where a third party gave money to the debtor, and the debtor then paid off the original loan, because the original lender did not remain a factor in the new loan. *Johnson v. Richardson*, 47 B.R. 113 (Bankr.W.D.Wi. 1985). The case at bar is distinguishable from *Johnson* because Shell was the lender on both the original loan and on the refinanced transaction. The Central District of Illinois Bankruptcy Court found a novation where the refinanced transaction did not identify the purchased goods as collateral and the refinance stated that the creditor was not being given a security interest in the property. *In re Hillis*, No. 86-72037 (Bankr.C.D.Ill. July 29, 1987). The present case is clearly distinguishable from *Hillis* because the original loan and the refinanced transaction clearly identify the 2006 Dodge Caravan as security for the loan. Because Shell was the lender on both the original loan and on the refinance, and because the 2006 Dodge Caravan was clearly described as the secured property, the refinance transaction in the case at bar should not be determined a novation.

In the present case, the obligations of Mr. Naumann have not changed sufficiently to find a novation; the changes to his debt are of the same type that have been held to constitute a renewal (and hence, a continuation of the purchase-money security interest. The Debtors raise the issue of the addition of Mrs. Naumann as an obligor in the refinance as grounds for finding a novation. However, 1) the addition of Mrs. Naumann did not change Mr. Naumann's obligations under either the original or the new loan; 2) since Mrs. Naumann wasn't and still is not in title, neither the original loan nor the refinance transaction would be a purchase-money secured transaction as to her. The addition of Mrs. Naumann has no bearing on whether the debt of Mr. Naumann remains a purchase money security interest under the refinance.

Because precedent dictates that the refinance in the case at bar is a renewal, and not a novation, Shell retains its purchase-money security interest on the 2006 Dodge Caravan. Because Shell retains its purchase-money security interest, the outstanding balance on the refinanced loan cannot be "crammed down" under Section 506(a)(1) of the Bankruptcy Code. Accordingly, Shell's Objection should be granted.

## **CONCLUSION**

Shell's interest in the 2006 Dodge Caravan is a purchase-money security interest, as defined by the Uniform Commercial Code of Illinois. The purchase-money security interest survives the refinance transaction because it is classified as a renewal. The refinance is a renewal because (i) Shell is the creditor on the original loan as well as the refinanced loan; (ii) no additional funds were borrowed at the time of refinance; (iii) the refinance was expressly secured by the 2006 Dodge Caravan, as was the original loan; (iv) prior cases have determined that a purchase-money security interest survives where there is a decrease in payment amount and an

extension of the payment period; and (v) the debt was not satisfied at the time of the refinance, because what was owed was not eliminated, it was merely transferred to another obligation.

Because Shell retains a purchase-money security interest, and because the loan was made within 910 days preceding Debtors' filing of their petition, and because the collateral on the loan is a motor vehicle, to be confirmable the Plan must provide for payment of the entire outstanding balance of the loan, with interest.

SHELL COMMUNITY FEDERAL CREDIT UNION

By: /s/ Paul H. Lauber
Paul H. Lauber #03122916
Attorney at Law
3B Club Centre Court
Edwardsville, IL 62025
(618) 692-9080