**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: ) | |
| **BENJAMIN & ELISHA NAUMANN,** ) | |
| ) | **No. 09-32092** |
| **Debtors.** ) | |

# O P I N I O N

This matter is before the Court on the objection filed by Shell Community Federal Credit Union ("Shell") to confirmation of the Chapter 13 plan proposed by the Debtors, Benjamin and Elisha Naumann ("Debtors").

The basic facts are undisputed. On April 7, 2006, Benjamin Naumann purchased a 2006 Dodge Caravan, financing the purchase through Shell. This loan was in Benjamin's name only, and was incurred more than 910 days before the Debtors filed their petition in bankruptcy. On September 11, 2007, within 910 days of filing their petition in bankruptcy, the Debtors refinanced the loan through Shell, adding Elisha Naumann as a co-debtor, increasing the interest rate by 2%, extending the term of the loan by twelve months, and lowering the monthly payment by $116.08.

On August 11, 2009, the Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code, listing Shell as a secured creditor holding a security interest in the 2006 Dodge Caravan. The Debtors filed a Chapter 13 plan in which they proposed to cram down Shell's claim to the value of the 2006 Dodge Caravan, which they stated was $9,875. Shell objected to confirmation of the Debtors' plan, asserting that its claim is not subject to cram down because it has a purchase money security interest in the Caravan, which was acquired for the Debtors' personal use, and the debt was incurred within the 910 days preceding the filing of the Debtors' bankruptcy petition.[1]

---

[1] On February 23, 2010, Shell filed proof of claim No. 12-1 in the amount of $20,969.05 at 7.7% interest as secured. The Debtors have objected to Shell's proof of claim, and a hearing on the Debtors' objection is scheduled before Judge Grandy on July 22, 2010.

Both parties have now filed briefs in support of their respective positions. The Debtors assert that Shell no longer has a purchase money security interest in the 2006 Dodge Caravan because (1) at the time of the refinancing, Shell did not give the Debtors a loan that enabled the Debtors to acquire rights in or the use of the collateral because the Debtors already owned and had been using the collateral for over a year, therefore, Shell did not grant the Debtors a purchase money security interest as it is defined in the Illinois Commercial Code, and (2) the refinanced loan was really a novation, which extinguishes Shell's original purchase money security interest.

Shell asserts that the refinancing transaction was a renewal, rather than a novation, and as such, Shell retained its purchase money security interest in the 2006 Dodge Caravan up to the balance of the original loan and cram down is not appropriate.

Before the amendments to the Bankruptcy Code enacted in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), the Code allowed secured claims (other than real estate mortgages) only to the extent of the value of the collateral securing the claim. If the claim was under-secured, it was bifurcated under § 506(a)(1) into secured and unsecured components based on the value of the collateral. However, in 2005, Congress added the "hanging paragraph" at the end of § 1325(a), after subsection (9), which changed this practice.[2]

The hanging paragraph provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [*sic*] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(9). Thus, under the plain language of the statute, to be entitled to this anti-

---

[2]This paragraph, which follows § 1325(a)(9), is referred to as the "hanging paragraph" in the cases because it has no separate designation either by letter or number and "just 'hangs' without ordered designation and without surrounding context." *In re Graupner*, 537 F.3d 1295, 1296 n.1 (11th Cir. 2008).

bifurcation protection, a motor vehicle creditor must satisfy four general requirements: (1) the creditor must have a "purchase money security interest" in the collateral; (2) the debt must have been incurred within 910 days before the filing of the debtor's bankruptcy case; (3) the collateral for the debt must consist of a motor vehicle; and (4) the vehicle must have been acquired for the personal use of the debtor. *In re Graupner*, 537 F.3d 1295, 1298 (11th Cir. 2008).  In the context of the instant case, the first and the second elements must be considered.

Focusing only on the first element above, Shell insists it retained a purchase money security interest in the collateral.  The Uniform Commercial Code as adopted by Illinois ("Illinois UCC") defines "purchase money security interest" as follows:

(a) Definitions.  In this Section:

(1) "purchase-money collateral" means goods or software that secures a purchase money obligation incurred with respect to that collateral; and

(2) "purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for the value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.

(b) Purchase-money security interest in goods.  A security interest in goods is a purchase-money security interest:

(1) to the extent that the goods are purchased money collateral with respect to that security interest . . .

According to the Debtors, the refinancing transaction did not give them a purchase money loan that "enabled them to acquire rights in or use of the collateral," and therefore, the refinancing transaction fails to meet the statutory definition of a purchase money loan under the Illinois UCC. Shell counters that there is clear precedent that a refinanced loan can retain a purchase money security interest if the refinancing transaction is considered a renewal of the original loan.

There is a split of authority among the circuits concerning whether a purchase money

security interest is extinguished when the original purchase money loan is refinanced through renewal or consolidation with another obligation. *In re Short*, 170 B.R. 128, 133 (Bankr.S.D.Ill. 1994). One line of cases follows the "transformation rule," which holds that a purchase money security interest is transformed into a nonpurchase money security interest when the proceeds of a renewal note are used to satisfy the original note because the collateral now secures an antecedent debt rather than a debt for the purchase of the collateral. *Id*. The other line of cases follows the "dual status rule," which holds that a lien may be partially purchase money and partially nonpurchase money and that the purchase money aspect of a lien is not automatically destroyed by refinancing or consolidation with another debt. *Id*.

Courts in the Seventh Circuit, however, have not embraced either the transformation or the dual status rule, but have, for the most part, taken a case by case approach which examines whether the debtor's obligation has been so changed by the refinanced loan that the resulting lien can no longer be characterized as a purchase money security interest. *Id*. at 134 (citing, *inter alia*, *In re Gayhart*, 33 B.R. 699, 700-01 (Bankr.N.D.Ill. 1983)).[3] Under this approach, a refinanced loan is determined to be either a renewal of the original purchase money obligation, in which case the purchase money lien survives, or a novation, which extinguishes the purchase money character of the loan, depending upon the degree of change in terms and obligation between the two loans. *Id*.

A novation is the substitution of a new obligation for an existing one, whereby the existing obligation is extinguished. *Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 887 (7th Cir. 2005) (citing *Faith v. Martoccio*, 21 Ill.App.3d 999, 316 N.E.2d 164, 167 (Ill.App. 2 Dist. 1974)). The four elements of a novation, which must be proved by a preponderance of the evidence by the party

---

[3] The issue of whether a refinancing transaction is a novation or a renewal most often arises under § 522 of the Bankruptcy Code in the context of lien avoidance, and the cases cited by the parties in the instant case are lien avoidance cases. This Court was unable to find any cases addressing the issue in the context of the 910 day rule contained in the hanging paragraph of § 1325.

4

asserting the existence of a novation, are: (1) a previous, valid obligation; (2) a subsequent agreement of all the parties to the new contract; (3) extinguishment of the old contract; and (4) the validity of the new contract. *Id*. (citing *Phillips and Arnold, Inc. v. Frederick J. Borgsmiller, Inc.*, 123 Ill.App.3d 95, 462 N.E.2d 924, 928, 78 Ill.Dec. 805 (Ill.App. 5 Dist. 1984)).

In *In re Hatfield*, 117 B.R. 387, 390 (Bankr.C.D.Ill. 1990), this Court, sitting in the Central District of Illinois, set forth the applicable test for determining whether a novation exists:

> [T]he test for delineating between a novation and a renewal is the "degree to which the original obligation of the debtor has changed and, to some extent, on any additional consideration which was conveyed by the debtor to the creditor. [*Gayhart*,] 33 B.R. at 700. The greater degree of change in obligation or increase in obligation, the more likely a novation will be found. *Id*.

The Debtors assert that the refinancing transaction significantly changed the obligations of the Debtors in that (1) it added Elisha Naumann as a co-debtor even though she has no ownership interest in the vehicle and was not personally liable on this debt before the refinancing transaction, and (2) it significantly increased the total amount of the debt by increasing the interest rate from 5.75% to 7.75% and increasing the duration from 72 months to 84 months, providing that the creditor will receive "a minimum of 5% more" after the refinancing transaction. The Debtors argue that these changes were sufficient to constitute a novation, thus extinguishing Shell's purchase money security interest in the vehicle.

Shell counters that the refinancing transaction is not a novation because (1) the same creditor made both the original and the refinanced loans, (2) it was secured by the same property/collateral, (3) it decreased the amount of the monthly payment even though it extended the time for payment; and (4) no additional funds were loaned.[4] As a result, Shell argues, the obligations of Benjamin Naumann have not changed significantly enough to find a novation. Shell asserts that the addition of Elisha Naumann as an obligor is not sufficient grounds to find a novation because adding her to

---

[4] Shell also argues that the purchase money security interest survives to the extent of the unpaid purchase price, which is essentially an argument for application of the dual status rule.

5

the loan did not change Benjamin's obligations and because she is not on the title, neither the original loan or the refinancing transaction would be a purchase money secured transaction as to her. Therefore, the addition of Elisha Naumann has no bearing on whether Benjamin Naumann's debt remains a purchase money security interest under the refinancing transaction.

In *Gayhart*, the court found that where the only changes wrought by the refinancing agreement were an increased interest rate and an extended payment period and where the refinanced note represented no fresh advance and was secured by the same property as was the original financing agreement, it was merely a renewal and, therefore, the purchase money character of the creditor's security interest remained intact. *Gayhart*, 33 B.R. at 701. In *Hatfield*, this Court found that the purchase money security interest character survived the refinancing because the only changes involved were an extended payment period and a small reduction in the amount of the monthly payments. *Hatfield*, 117 B.R. at 390. However, in *In re Sierra*, 2000 WL 33950138 (Bankr.C.D.Ill. 2000), this Court, sitting in the Central District of Illinois, determined that the refinancing at issue was a novation because there were numerous changes, including the borrowing of additional funds, the addition of a co-borrower, the addition of items of collateral, and changes in the interest rate and periodic payments. Likewise, in *In re Snyder*, 2001 WL 34059294 (Bankr.C.D.Ill. 2001), the Court found that the purchase money character of the security interest was extinguished because the entire character of the obligation was changed by the refinancing transaction as additional money was loaned, the repayment period was extended from one year to 31 months, the interest rate was increased from a "one year, same as cash" arrangement to 21% per annum, and the collateral for the original loan became collateral for both loans.

In the instant case, as in *Gayhart*, the Debtors did not incur additional debt or change the collateral securing the loan at the time of the refinancing, and only minimally increased the interest rate by 2%. However, the instant case contains one fact that makes it distinguishable from *Gayhart*:

Elisha Naumann, who was not an obligor on the original loan, was added as a co-debtor on the refinanced loan. Shell attempts to minimize the addition of Elisha Naumann as a co-debtor by asserting that adding her to the loan did not change its purchase money character as to Benjamin Naumann. However, the relevant question is the degree to which the original obligation has changed, and the addition of a co-debtor is a significant change in that it adds an additional party to whom Shell can look in the event of non-payment. Because the refinancing agreement in effect changed the parties to the transaction, it cannot be a mere renewal of the original loan. Thus, this Court concludes that the refinancing transaction must be characterized as a novation, and therefore Shell's purchase money character did not survive the refinancing.

Even if this Court had concluded that the refinancing transaction did not constitute a novation, but was instead merely a "renewal" of the original loan, as argued by Shell, this Court could still not conclude that Shell holds a 910 claim that cannot be crammed down. As previously noted in this Opinion, in arguing and briefing this matter, the parties focused only on the first element of a 910 claim: whether the creditor has a purchase money security interest in the collateral. However, for Shell to be entitled to the protection of the anti-bifurcation provision, the second element relating to whether the debt was incurred in the 910 days before Debtors filed their bankruptcy petition must also be satisfied. According to the undisputed facts, Benjamin Naumann originally purchased the 2006 Dodge Caravan on April 7, 2006 and financed the purchase through Shell. This transaction took place more than 910 days before the Debtors filed their bankruptcy petition on August 11, 2009. Accordingly, the provisions of the hanging paragraph do not apply and Shell's claim may be properly be bifurcated into secured and unsecured components under §506(a)(1).[5] Shell's objection to confirmation of the Debtors' proposed Chapter 13 plan is denied.

---

[5] Shell appears to assume that the date of the loan refinancing is the controlling date for determining whether the hanging paragraph would apply to protect its claim from bifurcation. However, the vehicle was actually purchased approximately 3 years and four months before the bankruptcy petition was filed. Therefore, the "debt was incurred," more than 910 days (or

7

The Debtors' plan will be confirmed as filed.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

ENTERED: June 8, 2010

           /s/ William V. Altenberger
UNITED STATES BANKRUPTCY JUDGE

---

approximately 2 ½ years) before the Debtors filed for relief under Chapter 13.  The legislative history of the hanging paragraph makes it clear that Congress's intent in adding the hanging paragraph was to ensure that debtors should repay in a Chapter 13 case the amount they actually agreed to pay for a motor vehicle that was purchased within 910 days of bankruptcy, instead of the value of the collateral. *In re Trejos*, 374 B.R. 210, 220 (9th Cir.BAP 2007) (quoting *In re Vega*, 344 B.R. 616 (Bankr.D.Kan. 2006)).  If the Debtors had not refinanced the vehicle, clearly Shell would not be entitled to the protection of the hanging paragraph.  Moreover, as noted by the Debtors, the definition of a purchase money obligation under the Illinois Uniform Commercial Code as "an obligation . . . incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used" means that the loan must have allowed them to acquire the collateral, and at the time of the refinancing transaction, they had already acquired and had been using the collateral for over a year.  Accordingly, the phrase "the debt was incurred" as used in the hanging paragraph must mean the date of the original loan which was granted for the purchase of the vehicle.